## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHELBY TURNER,<br>#M43625,<br><br>                    Plaintiff,<br><br>v.<br><br>J.B. PRITZKER, ROB JEFFREYS,<br>ANTHONY WILLS, WEXFORD HEALTH<br>SOURCES, INC., and MELVIN HINTON,<br><br>                    Defendants. | Case No. 21-cv-00154-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions for summary judgment filed by all Defendants. (Doc. 31, 33). Defendants argue that Plaintiff Shelby Turner has failed to exhaust his administrative remedies prior to filing this lawsuit. Turner filed a response in opposition to the motion and Defendant Wexford Health Sources, Inc. ("Wexford") filed a reply brief. (Doc. 38, 39). The Court held a hearing on the motions on March 1, 2022. For the reasons set forth below, the motions for summary judgment are granted.

### BACKGROUND

Plaintiff Shelby Turner, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), alleges he was subjected to unconstitutional conditions of confinement and denied adequate health care during the COVID-19 pandemic. On October 28, 2020, Turner initiated this action by jointly filing a Complaint with two other Plaintiffs, also inmates at Menard. (Doc. 1). *See Fleming v. Pritzker,* No. 20-cv-01133-SPM, Doc. 1 ("original case"). After determining that joinder of the three Plaintiffs would further delay the fair and efficient litigation of each Plaintiff's claims, the Court severed the case into three

separate lawsuits. (*Id.* at Doc. 57). This action was opened, and Turner, the sole plaintiff in this case, is proceeding on the following counts:

**Count 1:**    Eighth Amendment claim against Pritzker, Jeffreys, and Wills for overcrowded conditions at Menard, which subjected Turner to unconstitutional conditions of confinement, including the failure to follow COVID-19 safety protocols and delay of medical treatment.

**Count 2:**    Eighth Amendment claim of against Pritzker, Jeffreys, Wills, John Doe #1, and Hinton for failing to enforce and implement necessary safety protocols to protect Turner from the spread of and exposure to COVID-19.

**Count 3:**    Eighth Amendment claim of denial of adequate medical care against Pritzker, Jeffreys, Wills, and Hinton for providing Turner delayed and inadequate treatment after they contracted COVID-19.

**Count 4:**    Eighth Amendment claim of cruel and unusual punishment against Pritzker, Jeffreys, Wills, and Hinton for quarantining Turner in unconstitutional conditions of confinement.

**Count 5:**    Eighth Amendment claim against Wexford for denial of adequate medical care to Turner.

**Count 6:**    State law claim of intentional infliction of emotional distress against Pritzker, Jeffreys, Wills, Hinton, and Wexford.

(Doc. 1). On August 2, 2021, Defendant Wexford Health Sources, Inc. ("Wexford") filed a motion for summary judgment, and on September 15, 2021, Defendants Hinton, Jeffreys, Pritzker, and Wills filed a motion for summary judgment. (Doc. 31, 33). All Defendants argue that Turner failed to file any grievances regarding the issues in this case. They point to the grievance records maintained by Menard that show from March 2020 through October 28, 2020, when the original case was filed, Turner only filed one grievance. The grievance is dated February 28, 2020, and Turner complains of not receiving his property after being transferred to Menard. (Doc. 31-6). The grievance was responded to by a counselor on March 3, 2020, and Turner was given a call pass to access his property on March 8, 2020. However, there is no record of Turner filing a grievance regarding conditions of confinement while quarantined, medical care, or COVID protocols.

Because Turner did not file any grievances regarding the allegations in this case or the

named Defendants, Defendants contend he did not exhaust his administrative remedies prior to initiating this suit, and this case should be dismissed.

In his response in opposition, Turner argues that he filed an emergency grievance complaining that his constitutional rights were being violated during the pandemic and that he was not provided medical care and other necessities while quarantined, but the grievance "somehow came up missing." (Doc. 38). He claims staff retaliated against him by throwing out his grievance, hindering his ability to exhaust. Turner claims he wrote letters to his counselor and the warden asking about the status of his grievance. He also wrote to the Administrative Review Board seeking assistance in using the grievance process. Turner claims he then filed a second grievance complaining about how we was being retaliated against and never received a response from the first grievance. The second grievance was also never responded to by staff. Because he never received a response to his grievances, the process was unavailable to him, and the motions for summary judgment should be denied.

Defendant Wexford filed a reply stating that extraordinary circumstances necessitate filing a reply brief. (Doc. 39). Wexford states that in Turner's response, he concedes to not filing his grievance according to the relevant grievance procedures.

First, Wexford points out that Turner states he put his grievance "on the bars" to be "picked up by an officer," which is not the correct process for filing grievances. Pursuant to the Illinois Administrative Code, prisoners are required to deposit grievances "in the living unit mailbox or other designated repository." (*Id.* at p. 1) (citing 28 ILL. ADMIN. CODE §504.810(c)). Wexford argues that Turner knows the proper process because he states in the response, he submitted the second grievance for review by "placing it in the black box" used to collect grievances.

Second, Wexford argues that the timeline of events demonstrates that Turner could not have fully exhausted prior to filing this lawsuit, and thus, the Court must find that his

administrative remedies were available. (Doc. 39, p. 2) (citing *Jones v. Piper,* 2014 WL 4296671, at *3 (C.D. Ill. Aug. 29, 2014)). The Illinois Administrative Code gives a grievance officer as least two months from the date of receipt or a grievance to report his or her findings to the Chief Administrative Officer, and there is no mandated response time for an emergency grievance. The record indicates that Turner was released from COVID quarantine September 1, 2020. Even assuming he placed his emergency grievance in the bars that same day, Wexford argues he initiated the suit less than two months after filing the grievance and did not allow enough time for the process to be completed. Thus, he failed to follow proper procedures when using the grievance process, and the motion for summary judgment should be granted.

LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The moving party is entitled to judgment as a matter of law when the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c).

### II. Exhaustion of Administrative Remedies

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the

PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion of available administrative remedies must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This allows the prison administration an opportunity to fix the problem or to reduce the damages and perhaps shed light on factual disputes that may arise in litigation even if the prison administration's solution does not fully satisfy the prisoner. *See Pozo,* 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002).

### III. Grievance Procedures

As an inmate in the custody of IDOC, Turner was required to follow the grievance procedure laid out in the Illinois Administrative Code ("grievance procedures"). 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures direct an inmate is to file a grievance first with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> [C]ontain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine

channels are then sent to a grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). The grievance officer must submit his findings to the chief administrative officer ("CAO") within two months after receiving the grievance. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then reviews the findings and recommendation of the grievance officer and issues a written decision to the inmate. *Id.* If the inmate is not satisfied with the response, he can file an appeal with the Administrative Review Board ("ARB"). *See* 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days after the date of the decision by the CAO. *Id.* Only after a grievance is reviewed by the ARB is it deemed exhausted. *See Pozo*, 286 F.3d at 1023–24.

### ANALYSIS

Th Court finds that Turner failed to exhaust his administrative remedies prior to initiating this lawsuit. His contention that his grievances were destroyed or intentionally mishandled is not supported by the record. He states that during the span of his incarceration, he has filed only three grievances total. The first grievance, dated February 28, 2020, is recorded in the Menard Grievance Logs and Turner's Cumulative Counseling Summary. (Doc. 31-6; 34-1).Turner testified that he received a response from this grievance. The other two grievances, pertaining to this case, conveniently have gone missing. These grievances are not documented in any grievance records, and Turner did not make copies prior to submitting the grievances. Turner claims that he knew that the grievances reached their destination and were being intentionally ignored because staff made comments to him about this civil suit and the motion for preliminary injunction he had filed. (*Id.* at p. 10-11). The Court does not find this argument persuasive. Turner does not provide any details about these staff members, including their names, positions, or when these interactions

occurred. Additionally, the comments about his civil suit, which is public record, is not evidence that the grievances were properly filed, received, and then ignored prior to filing this lawsuit.

In support of his arguments that the grievance process was unavailable to him, Turner also provides affidavits from other inmates. But again, these affidavits do not speak to Turner's assertion – that he properly submitted the two grievances in September 2020 and then the grievances were destroyed in order to prevent him from filing a lawsuit. (Doc. 38, p. 11, 17-23). Rather, each inmate makes the same general statement that they too submitted grievances that have gone unanswered. The affidavits do not provide any dates or specific factual allegations regarding these missing grievances or staff members involved. Turner and the other inmates argue that the grievance process at Menard is nonfunctional, but no explanation has been provided for why the grievance process was available to Turner in February but then not in September.

The Court also finds Turner's testimony not credible. At the hearing, Turner made several statements that directly conflict with assertions made in his response in opposition to the motions for summary judgment. (*See* Doc. 38). In the response, Turner states he filed the first grievance as an emergency by placing the grievance in the bars of his cell. (Doc. 38, p. 3, 9). The grievance was then picked up by an officer on the 11 p.m.-7 a.m. shift, along with regular mail. (*Id.* at p. 9). After not receiving a response, he wrote his counselor several letters asking about the status of his grievance. He also wrote to the warden and sent his grievance to the ARB, explaining how there were issues with the grievance process at Menard. (*Id.* at p. 9-10). However, Turner testified that he filed the first grievance by placing the grievance in a black box that was brought to his cell by a correctional officer around 10 p.m. before shift change. He stated that he did not designate this grievance as an emergency. He further testified he never wrote letters to his counselor and did not recall writing the ARB.

As for the second grievance, in the response, Turner states he submitted the second grievance by placing it "into the black box," and again, he did not receive any kind of answer. (Doc. 38, p. 10). But he testified that he submitted the second grievance by placing the grievance in cell bars for pick up with regular mail. After not hearing back from either grievance, he initiated this suit on October 28, 2020. Turner testified he spoke to his counselor about the missing grievances sometime after he filed both grievances, but he could not specify a date. He stated it could have been in 2020 or months later in 2021.

Based on the record and Turner's testimony, the Court finds that there is no evidence to support Turner's contention that the administrative grievance process was unavailable to him. There is also no evidence that he filed a grievance regarding the allegations in this lawsuit. Thus, he has failed to fully utilize the grievance process prior to initiating this suit. Accordingly, the motions for summary judgment are granted.

### DISPOSITION

For the reasons stated above, the Motion for Summary Judgment (Doc. 31) filed by Defendant Wexford Health Sources, Inc. is **GRANTED.** The Motion for Summary Judgment (Doc. 33) filed by Defendants Hinton, Jeffreys, Pritzker, and Wills is **GRANTED.**

This case is **DISMISSED without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   March 11, 2022**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**